Thank you. You may be seated. Good morning, ladies and gentlemen. This is case number 411-0678, Dundee's International v. Brian Hamer et al. Let's see, we have Attorney House Hyens for the appellant, and we have Assistant Attorney General Brian Barrett for the appellee. And I see another counsel sitting at the table. Will you be the only one arguing? Okay, thank you. All right, you may proceed, counsel. Hollis Hyens I am Hollis Hyens, representing Wendy's International, and I also thank you for allowing me to appear today, Pro Hoc feature. The issue today is whether Scioto Insurance Company, a Wendy's subsidiary, is an insurance company, because if so, under Illinois law, it cannot be included in a combined Illinois income tax return with its parent, Wendy's, and other affiliates. Even if it is a captive insurance company, which it truly is. Both parties filed motions for summary judgment on a stipulated record that consisted of 29 exhibits. There were no disputed facts. Therefore, the court below, without stating a reason, issued a decision that Scioto was not an insurance company. It's hard to know why. There were only 52 words in the decision, and no reasons were given. But whatever it was, it was a decision of law, a conclusion of law, because there were no disputed facts, and so it is reviewed by this court de novo. As the parties agreed, the defendant's brief at page 11 also says that it is reviewed de novo with no deference to the court below. This is not a case involving a tax exemption, which is suggested in the department's brief. This involves a tax imposition statute, and whether a combined report must be filed. Well, counsel, let me stop you there. So, who has the burden here? There's two different cases cited. Caterpillar, and I think there are cases, is it Zebra? Yes. Caterpillar stands for the standard proposition that when it is a tax imposition statute, the imposition statute must be interpreted strictly against the government and in favor of the taxpayer. The Zebra case that's cited by the defendant, we suggest is inapplicable for several reasons. First of all, there was a factual dispute in that case, and the first district appellate court specifically stated that it was reviewing the trial court's findings of fact, which are entitled to great deference. It was not a conclusion of law. Second, it dealt with a company that was arguing it was an 80-20 company. In tax language, that means 80 percent of its business done outside the United States. If it was an 80-20 company, it was exempt from tax. But that case did specifically deal with Section 304. Yes, it did. As this case does. As it does. But in that case, it was an 80-20 company, which would have been exempt from tax, even if it did business in Illinois. What we have is a captive insurance company, which is never exempt from tax, unless it's not doing any business here. An Illinois captive insurance company, and this is very explicit in the Illinois statutes, is treated just like any other insurance company. And if it were doing business here in Illinois, it would be subject to tax, and tax is imposed on captive insurance companies. So, I want to make sure I understand this. With regard to this 80-20 that you've spoken about, even though that is contained within Section 304, as is the special corporate treatment, you're still saying, nonetheless, the 80-20 issue does have to do with an exemption? First of all, Your Honor, I don't think that case was right, even as to an 80-20 company, because the issue, even in that case, was whether or not it could be included in a combined return. It was not the underlying issue of whether it was exempt. But I can see kind of a glimmer of a reason why they might have thought there was an exemption involved in that case. I can see no reason, in this case, why anyone would consider this to be an exemption from tax. That case has been followed as precedent by other appellate court cases, has it not? It has been followed for what it said in that case. But I'm not aware of any other case, nor has the defendant cited any other case, that stands for the proposition in deciding whether an insurance company is or is not included in a combined return in Illinois, that that is an exemption from tax. Are you familiar with the Chicago Bar Association case, which is an Illinois Supreme Court case? No, I don't believe I am. Well, they cited the language from Zebra in that case. And I believe that was, if I'm not mistaken, it was a case involving real estate taxes. And I would be confident, because I have read every case, I feel confident I have read every case in the past two weeks under Illinois law dealing with a captive insurance company, and that it had nothing to do with a captive insurance company. I'm certain you're right, it has nothing to do with a captive insurance company. And while the term captive insurance company is defined under Illinois law, and while tax is imposed on insurance companies and captive insurance companies, the term insurance company is not defined under Illinois law. And therefore it is appropriate to look to how that term is used under federal law, because an Illinois statute tells us that any term used in the Illinois statute but not defined, but also used in the federal code, we should look to the interpretation under federal law. Here, federal law not only has a regulation for the first part of our period, and a statute for the second part of our period, and cases, and rulings. There is an actual determination by the Internal Revenue Service of this entity, of the Scioto Insurance Company. The issue was raised on a federal audit, began in November of 2004. You say an actual determination. Yes, Your Honor. What is that actual determination? The actual determination, after the IRS auditor sought assistance from the IRS insurance industry expert, and from the IRS national office, which is about as high up as you can go. They advised Wendy they were accepting Scioto as an insurance company, and they documented this in what's called a form 4959, which is in the record beginning at page C280. It also contains a form 886A, which is a few pages later at 283. And it shows changes to Scioto's loss reserve deductions, which are deductions allowed only to an insurance company. And it says available to insurance companies, and it notes that it is allowed to take these losses. These losses amounted, that it was permitted to take, and the IRS made some slight adjustments. They knew they were there, and the losses that they were permitted to take amounted to hundreds of thousands of dollars of tax benefits. The IRS audited Wendy's again for the 04 through 06 years, and again allowed Scioto to be treated as an insurance company. And the defendant... Even if the IRS did make an actual determination, as you are asserting, we're not bound by that, are we? What Illinois law tells... I mean, the IRS does make mistakes, does it not? Well, I would suggest that... I suppose they could make mistakes, and I'll be happy to explain why I think it is correct, the determination that they made. But under Illinois law, this court is supposed to follow the determinations made as to how the term is used by the IRS. So an IRS determination is quite important to you. And the Illinois Department of Revenue knew this. It put its audit on hold for 13 months while the audit was going on. When the IRS accepted it, the auditor there, too, went for technical advice. And they stated in their own request that they had received documentation from Wendy's indicating that the IRS has accepted Scioto as an insurance company. That's at page 721. And they asked, should we still treat Scioto as an insurance company since the IRS has determined that they are an insurance company? And the technical advice they get back, if the IRS has accepted Scioto as an insurance company, it's going to be very difficult for us to convince a judge that we have a better understanding of the IRS rules than does the IRS. So while the department put its own audit on hold awaiting the federal result, it now does not want to follow the federal result. Instead, it went and interviewed the IRS auditor, who had been overruled, and they all together decided they didn't like the final result. But they admit that the IRS auditor could not get support and had to drop the issues. They do not cite a single case for the proposition that when there has been an actual IRS audit of the issue, and the Illinois statute says we follow federal interpretation of these terms, that that is not the interpretation that should be followed. They cite two cases for the argument that you should ignore the federal result. This is on page 26 of their brief. One is the Holt case, which involved a tax protester in New Mexico who was taking the position that wages earned for salaries was not income. That position has been rejected by every court in the country that has considered it. And so the fact that that individual put zero on his federal income tax return was not included. And they cite a second case, Maxitrol, in which the Michigan Court of Appeals held that a taxpayer could not prevent the Michigan Department of Treasury from reviewing their Michigan return just because they had used the same numbers they had used on their federal return. Neither of those cases involved an actual IRS audit of the very issue that is in dispute. So, I'm sorry, is there something in the audit report from the IRS that says SIOTA is an insurance company? There's something that says an insurance company is permitted to take these losses. Is there anything else that you could have done on behalf of Wendy's, like go in and ask for a letter ruling on your status, or on SIOTA's status? Well, a letter ruling would be at the point that the IRS agrees with the taxpayer. I don't know that they'd even issue a letter ruling. And a letter ruling is of no greater value than the actual IRS determination. A letter ruling binds the taxpayer, but no one else. The court should not hesitate to follow what the IRS did, because if you look at the critical facts, SIOTA was established and qualified as an insurance company. Wendy's set it up to cover all sorts of insurance, legitimate insurance risks. There was specific mention of mad cow disease as to which it was hard to get insurance, but that was not all it did. It did all sorts of workers' comp, product liability, all sorts of issues. It allowed better management of these insurance risks. The Vermont authorities do not allow companies to set themselves up without investigation. The Vermont authorities investigated, and they wanted it to be better capitalized, and in order to capitalize it, Wendy's transferred ownership of an LLC, Old Mark, which itself owned valuable intangible property. The Vermont authorities were satisfied with that, and we submitted an affidavit, which is in the record at page 824. The Assistant General Counsel from Vermont reviewed this. They didn't just pass on it, they did an investigation, and then they were satisfied. SIOTA had a third party that performed services for it, a supervisor, and four to five staff members. So the business that it was in was the insurance business. It owned a separate entity, Old Mark, which due to a tax fiction, which Illinois follows, it's treated as a single member LLC, and so its royalty income flows through to its owner, SIOTA. But SIOTA's only business was insurance, and the point of that investment was to secure that insurance investment. You say its only business was insurance. How do you account for the incredible amount of revenue that it received from the royals and from interest as well? Yes, there's no doubt that any insurance company has to have significant assets to secure its potential liabilities. It faces catastrophic potential liabilities. That's why that investment interest in Old Mark was transferred to the insurance company. What if there had been a catastrophic liability, say a large mad cow disease claim, and SIOTA would be in a position only to make payment on the insurance contract based upon the royalty income that it received versus premium income. Does that make a difference? Does that harm your argument? It does not really harm the argument, and that is an issue that was actually considered because the auditors, the Illinois auditors, were concerned about that, and you can see that they tried to leave behind what was done. At page 708 of the record, they recite how when SIOTA was incorporated, the Vermont Department of Insurance looked into this issue and came back to the company and asked them for further analysis of their model. They advised that they were satisfied with the adverse scenario. So as a matter of insurance, of spreading the risk over all of the companies, and not every one of the Wendy's companies is in the hamburger business, Your Honor. There's also donut businesses and Baja Fresh. That's sort of a basic tenet of insurance, that you spread the risk over the pool. And so everybody did look at this, and this is not a question that's raised only by Illinois. Did SIOTA spread the risk to any corporation or business that wasn't a relative? No. By the nature of it being a captive, which is exactly how it's defined under Illinois law, it provides insurance only to its parent and or affiliates. That's what makes it a captive. And that's a very recognized concept. And there's a very important case to keep in mind, which is the Humana case decided by the Sixth Circuit, which held that until that case, there had been some question whether a captive insurance company was a valid insurance company. The IRS looks into this frequently. And in that case, the court held that while insuring the parent was not enough, insuring the affiliates was. It was perfectly valid risk shifting and perfectly valid insurance. And that is what SIOTA was. I'm looking for it. I haven't got my hands on it yet. I think there's a Ninth Circuit case that would represent maybe an opposite view. There was a Ninth Circuit case that had been decided earlier, I'm not sure if that's the one that Your Honor means, Clowardy Packing Company. I'm not sure if that's the case that you had in mind. But there, there was a parent and a directly owned subsidiary that was in between the parent and the ultimate subsidiary. And it stands for the principle that an insurance agreement between a parent and a captive may not be sufficient. But Humana distinguishes itself from that decision, Your Honor. The presence of the affiliates is a significant difference. That brings us back to the definition of Illinois law, which recognizes captive insurance companies expressly and taxes captive insurance companies if they are doing business here. We believe that this company should be treated exactly the same under the uniformity clause and that it cannot be included in a combined return. I know this time is moving along. Let's make sure you have any further questions. I don't see anything to help. I probably do, but I can't think of what they are right now. I'll come back and rebuttal. Thank you. Thank you, Counsel. Mr. Barof. Thank you, Your Honor. May it please the Court, Brian Barof, Assistant Attorney General, on behalf of the Illinois Department of Revenue. As to the burden of proof issue, there is a more fundamental principle at stake rather than deciding whether the exclusion of Seattle from the unitary group is properly considered as a tax extension or a tax exclusion, although this is a tax exclusion under the Zebra case. It's simply that this case arose out of a notice of deficiency issued by the Department of Revenue. Under Section 904 of the IITA, the notice of deficiency is primarily true and correct, and it's the burden of the party opposing it to prove its case with books and records. So no matter how you characterize this dispute, the burden of proof is always with Wendy's. And there's good reason for that. Wendy's is the master of its books and records. They have the ability to show what the character of the case is. How do you explain the Caterpillar case? I'm sorry, the Caterpillar? Yes. But cited in, I think it's in the reply brief. You say it doesn't make any difference whether it's considered an exemption. I'm not saying it doesn't make any difference. It is, I think, underneath when we look at the Zebra case. Whenever you have an exclusion from a taxable group, whether it's characteristically called an exemption or a deduction, it's always the burden of the party seeking to exclude itself from taxation. Okay, here's the Caterpillar case cited in the reply brief. It is well established that any doubt as to the application of tax laws must be construed most strongly against the government and in favor of the taxpayer. That's true. That's true. That was a case where, and I don't have the facts of that case at hand, but I believe that was one of the first cases where the question of Why didn't that apply here? Because in that case it was actually the taxpayers were trying to apportion. They were trying to seek exclusion under the apportionment statute in that case, I believe. Here, a party was seeking to exempt itself from taxability. So you had a different set of facts there. And people try to make this distinction between exclusions and deductions and tax extensions all the time. But if you're trying to exempt yourself from a unitary group under 304, as I think you pointed out, that constitutes an exclusion from the unitary group. In that case, the burden of proof is on the taxpayer. So you're using the term exemption and exclusion interchangeably. Yeah. The best word to use is a tax benefit. They're trying to receive a tax benefit. That's a difficult concept for me to differentiate, especially if I'm sure opposing counsel is going to say that you're wrong. Right. The tax code has a number of different ways to reduce your taxes. You get tax credits. You get tax deductions. You get tax exclusions. They're all defined somewhat differently. But a taxpayer who's seeking to – they often can fall under the rubric of a tax benefit. And generally the rule is when you're seeking a tax benefit, the burden of proof is on the taxpayer. Now Caterpillar is a little different than that. This was the first time the question arose to whether apportionability even applied to Illinois corporations. In that case, whether – so it was more popularly categorized as a tax extension. And so the burden of proof is on the taxpayer. Isn't the appellant, though, arguing that they're a captive insurance company authorized or doing business in the state of Vermont, not in the state of Illinois, and therefore not subject to the imposition of a tax in the first place? Isn't that their argument? Their argument is no. I don't think that's exactly their argument. What they're using the Vermont – the Vermont licensure to show that they are a legitimate insurance company. Well, that shows when you – the fact that they were licensed in a different state demonstrates what business they intended to do, what business they were authorized to do in Vermont. But it doesn't – they're not seeking exemption because they're a Vermont insurance company. But the way the tax statute works is in Illinois you'd find – you have a unitary group of corporations whose income is apportioned to – their net income is apportioned to the state of Illinois. Certain specialized companies get excluded from the unitary group. One of those companies is an insurance company. So if you're an insurance company, whether you're an Illinois insurance company or any other insurance company from another state, your income is not apportioned with the rest of the unitary group. When you're talking about the unitary group, you're talking about Wendy's International in this case? No, not Wendy's International. This is the unitary business group. Nobody – and unitary business is a concept that looks to the flow of value, the intangible flow of value. Nobody's suggesting that, as far as I can tell, that Sciato and Wendy's are not part of a unitary business group under the statute. The question is, can they be excluded because there's a special apportionment formula for insurance companies? And the insurance – the apportionment formula for insurance companies is based on – But counsel's going to say that is different than claiming an exemption. And you're saying there is – I don't see how it's different under ZEBRA when you have a – the company is, you know, are we at 80-20? That's the exact same thing to say we're not part – the 80-20 definition is the same thing. If a company – under the 80-20 definition, if a company does, I believe it's less than 80 percent of its business in the U.S., it's excluded from the unitary group. Well, counsel, the bottom line is if they're an insurance company, then they're not included, right? That's correct. And they were audited by the federal government, and they did not determine that they were not an insurance company, correct? What the federal government decided – did is they decided not to make an inquiry into psi-autostatus. They accepted their representation. And their representation was that they were an insurance company. Sure, that they were an insurance company. But the failure to inquire is the determination as to the psi-autostatus by the IRS. They've cited no authority for that process. What the evidence showed was they got a phone call from the IRS. The IRS said, we're going to accept your status. They issued this audit form saying, we're going to accept your status. And away they went. But the federal government's allowing them to deduct the insurance company – well, their income, right? Well, they're allowing them a certain deduction. Set up reserves. They're allowing a certain federal deduction that applies to insurance companies. Okay. To deduct, I guess, its losses. Isn't that an implicit determination that they are an insurance company? It's not a determination. Basically, it's a failure to enforce. The analogy – maybe this isn't a perfect analogy. It's kind of like a decision not to prosecute. The federal government and the state government may just look at you investigating criminal action. And the federal government may say, you know what? It's not worth our time and resources to prosecute here. But there's no question that the state will follow the federal interpretation. What the state follows is federal law. And we don't define an insurance company, and so we rely on the federal – Federal construction. It says – here's what Section 102A says. It says, any term used in this action will have the same meaning as one used in a comparable context in the United States Internal Revenue Code. It doesn't say, we're going to do whatever the IRS says it does. Now, there's a regulation that they haven't even relied on, which is the 100.9200, which says, we're going to – if the IRS declines to act, we're not going to follow that. That's exactly what you have here. You have the IRS decline to act. Welles doesn't even believe this regulation applies. They've never cited it in any of their briefs. What do they need to do, in your opinion, to become a recognized insurance company federally that the state would be bound to follow? What is it that they could do, other than what they've done? Well, what they have to do is show – provide sufficient facts to show that they're an insurance company. Now, what I'm getting at is, what is it that the IRS would give them that would satisfy them? I mean, if there were some final determination by the IRS, a dispute, they'd challenge the IRS that that – But they have no reason to challenge the IRS, actually, because the IRS has found them to be an insurance company. But, again, it didn't find them to be an insurance company. But it treats them like an insurance company for tax purposes. It treated them like an insurance company for tax purposes. But, again, you look at – let me – I'll read from the record. This is a bit of a long quote. This is from our audit. It says, on the captive insurance company issue, my supervisor, Connie Piperberg, and I attended a meeting with IRS agent Terry Jones and his supervisor, Jim Vareta. According to Terry Jones, he was questioning whether Sciato Insurance Company was an insurance company and wrote up the issue on a Form 886A explanation of items. He was questioning the amount of capitalization of Sciato and the use of trademarks to capitalize on Sciato. However, he could not get support from the IRS National Office, so he had to drop the issue. So the IRS agents went to what's called the National Office with questions about Sciato's bona fides, I guess you will, and the National Office decided not to investigate them further. Now, the National Office's decision not to decide to investigate further is no sort of final determination by the IRS. It's just, we've decided there's not enough resources here. I mean, it's like any other agency decision not to enforce. It's usually based on lack of resources, lack of payoff as to, you know, bang for your buck. Or lack of proof. Or lack of evidence. But, you know, is it worth litigating this issue? The IRS decided that it wasn't, but that does not bind the Illinois Department of Revenue in this case. So, again, we have to look back to what federal law actually is as to what the definition of insurance company is. Insurance companies earn their income two ways, primarily. They sell insurance contracts and earn premiums, and they accumulate the lost reserves and then earn income on the lost reserves. Here, the sum total of the evidence was there's a wide disparity between the income earned by the royalties earned by Sciato and that earned by the premiums. There's something like an average of 84% of the income earned by Sciato is from the royalties. In addition, the overwhelming majority of the evidence of interest here came from intercompany loans. None of this looks like a company that's in the business of insurance. What is their business of selling insurance? They could be, I mean, Wendy's, there's a number of, Wendy's could have set them up as an investment business. They couldn't, Wendy's could have set them up as a way to have lost reserves for their businesses. That's perfectly legitimate. We're not suggesting this is a legitimate business. It's just not, it doesn't qualify as an insurance company under the federal tax code. Did Wendy's drop their liability insurance? Do you know the answer to that? I don't know the answer to that. They might have dropped their liability. I mean, is this the only way they insure themselves? They can insure, but a company can always set up lost reserves. If you set up a lost reserve system, it doesn't necessarily make you an insurance company. An insurance company has specific definition under federal law. And, I mean, even if you look to some of the other factors that, you know, the federal courts have looked to, subjecting to state insurance laws, relative distribution of employees, the amount of space devoted to service business activities, there's nothing in the record that shows what Wendy's does. So Wendy's presented no evidence of any of that? There's very little. I mean, you have affidavits of, there's the affidavits of Royer Moriarty and Varon who talk in very general terms about why they set this company up, that they entered into various insurance contracts with various companies to insure various risks. The most specific fact that is mentioned is in Chris Varon's affidavit, C-826, which says, I supervise the Marsh team of four to five staff members that manages Scioto's business. Well, what were they doing? Were they collecting royalties from the trademarks? Were they processing inter-office loans? Were they processing claims? There's simply no evidence to show exactly what Scioto did on any sort of day-to-day basis. So the department doesn't have a position on what its, quote, main business was? It looks to me like it's based on the evidence that its main business was investing royalties. And it could have been, again, it could have been a way to. Okay. You lost me. Investing royalties. I'm sorry. Investing. Its main business was to collect the royalties on its trademarks. It served almost as an investment business. The other possibility is that, again, you look at the amount of inter-office loans that came through Scioto. They were not insignificant. In 2002-2003, this is at C-179, $396 million in loans to Wendy's International. These were all loans that had no due dates on them. In 2006, $537-$650 million loans to Wendy's for maturity on demand. So it could have been that this was a way to create disguised dividends. It could have been used as a treasury function. It could have been used as an investment company. It could have been used as lost reserves. I mean, there was evidence in the record that they purchased these insurance policies and they were paying some claims. All of that is all well and good, but it doesn't make them an insurance company for Illinois tax purposes. And it doesn't give them the right to exclude themselves from the unitary business group. And, again, it's the same problem you have with the evidence of risk shifting and risk distribution. Would it be unusual for a captive insurance company to loan money to the parent company? I think, well, it would seem to be. I mean, that's not really what they're doing. And that's because you're not really distributing the risk if you're loaning money back to the parent company. Because even when you have what Humana and other courts have said is risk distribution between sort of brother-sister affiliates at that level, if the premiums are coming in from the affiliates and then going back out to the parent, is that really risk distribution? And that's an interesting fact because both of us, we cited these dueling revenue rulings. Wendy's and the department cited these dueling revenue rulings. And while revenue rulings aren't binding, it's very interesting. Because the key facts, and this is revenue ruling, IRS revenue ruling 200290, and I think we cited 200540. In both of those cases, the IRS found there was genuine risk distribution because the amount of risk distribution was quantified. It was quantified because each of the subsidiaries in those cases have liability for no less than 5% and no more than 15% of the total risk. Here, there is no quantifiable risk distribution. The affidavits state, well, we equated all these insurance policies, workers' comp policies, casual policies for all this myriad, Wendy's and affiliates, but we don't know how that risk was distributed. We don't know if it was predominantly in one company or in a couple of companies or how it was centered throughout the system. Again, they just didn't come up with the evidence to show the proper risk distribution in this case. We know there can't be risk distribution between the parent and the subsidiary. That's been, I think, the Humana case and others in the Clarity case have decided that. Again, there's just a failure of proof here. There's no quantifiable risk. There's no evidence consistent with books and records. Again, no showing. They haven't tied this back. This was their predominant business was shifting of risk. There may have been lost reserves. That's great. It may have been an investment company. Wonderful. It's not an insurance company under Illinois law. Again, the Ocean Drilling case is another example of a case where the courts found there was risk shifting and distribution where a wholly owned subsidiary conducted extensive business with unrelated companies. Here, there's none of that. This is all inside. The money's going from the affiliates back to the insurance company and back out to Wendy's. Whatever this is, it doesn't show evidence of a true insurance company under federal law. Let me just also make one point before I overlook it. It's the technical support comment on the Vermont status. I think I mentioned briefly the status of Vermont. It shows what they may have intended to do. It shows that they're an authorized issue. It doesn't show what the actual character of their business is. The internal comment in the technical support memo, that's great. I think it's important that there's a robust discussion of tax policy in the department. It doesn't suggest any position by the department. The final decision by the department is in the notice of deficiency. That's the prima facie true and correct tax liability in this case. If there's no other questions, I would ask that the decision of the circuit court be approved. Thank you, Counsel. Ms. Hyatt. Thank you, Your Honor. I think you all have anticipated some of the things that I would say on rebuttal. Counsel's argument seems to be trying to write out of the Illinois law, as well as the law of every other state and federal law, the existence of captive insurance companies. Illinois law defines a captive insurance company as a company that insures only the risks of its parent or affiliated companies or both. An Illinois captive insurance company is taxable as an insurance company to the same manner and to the same extent as any other domestic insurance company. There's no exemption from tax anywhere involved in this case. There's a nexus rule, which is if this company were doing business in Illinois, it would be separately taxed and it would be excluded from the combined group, even though it is purely a captive and doing business only with its parent and or affiliates. That's right in the statute. Because it is not doing business in Illinois, it is not taxed here. It is taxed in Vermont. And it's been true in the law of this country since the 60s under a Supreme Court decision that insurance companies are not taxed in states even though they may be covering a risk in that state. Has any other state other than Illinois attempted to tax this captive insurance company? Illinois has not, in fact, reached out to tax this captive insurance. It's merely trying to pull it into the combined return. But yes, Your Honor, the state of Oklahoma has reached out and did try, this is not part of the record, but to answer your question, the state of Oklahoma did reach out and try to tax SIOTA as if it were doing business in that state. And the Oklahoma Supreme Court moved in favor of SIOTA, but it did not have sufficient contact. Counsel, I actually took a look at that case, and there's an interesting footnote in the dissent. It says, during oral argument, counsel for SIOTA acknowledged the company has never paid an insurance claim. Isn't that a very strange thing to find in that decision? It would be, but it's also incorrect, Your Honor. None of this is in the record, and none of it was raised in this case. But my son handled that case as well. The dissenting justice on the Oklahoma Supreme Court making that statement, that footnote, was wrong? Yes, yes, Your Honor. I'm afraid that he was. There were many insurance companies paid, including in the state of Oklahoma. Insurance claims paid. I'm sorry, insurance claims paid. Yes, there were insurance claims paid. Because I did the same thing, Your Honor, when I read that sentence. I personally was not involved in that case, but I went to my partner, who was, and I said, isn't this a problem? And he said, that is just wrong. And he showed me a stack of evidence that was in the record, that there were, in fact, insurance claims paid in Oklahoma. Well, maybe it wasn't the justice that was wrong. Maybe it was the counselor in his or her oral argument. I hesitate to speak so of one of my partners, Your Honor. Okay. We'll leave it at that. This was not a failure to inquire. This was a two-year investigation by the IRS. This was not, oh, we made a phone call and we said that you can go ahead. They involved their IRS insurance experts. They involved the national office. They issued the document that I would encourage, Your Honors, to look at in the record, saying we are allowing these losses to an insurance company. The IRS agreed that this was an insurance company. Vermont agreed that this was an insurance company. Before your time, counsel made an argument you just didn't present enough evidence. How many employees were engaged in selling insurance and collections of it, office space, all kinds of different things. What's your response to that? Our response was that the activities of engaging in the insurance business were outsourced to a third party. An affidavit from that third party was introduced into the record. Those were the only individuals who performed services on behalf of Scioto. The investment property that was owned by Oldmark, a separate company at LLC, yes, the investment flows through under the tax law. But that is not a business being engaged. We also have an affidavit that explains that through a portfolio transfer, this new company assumed previously existing policies and then began issuing new policies on these matters. Wendy's did not let itself go without insurance in its business around this country. This is the insurance company it relied on and it should be excluded under that law. Thank you. Thank you, counsel. This court will take this matter under advisement and be in recess until after 1 p.m.